LJW: USAO#2010R00296

APR 3 0 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. ELH-14-0208 |
| ) | |
| RICHARD L. WRIGHT, III, ) | (Conspiracy, 18 U.S.C. § 371; Bribery, |
| KIMBERLY A. PARNELL, ) | 18 U.S.C. § 201; Aiding and Abetting, |
| SHANE ANDERSON, and ) | 18 U.S.C. § 2; Forfeiture) |
| LADENA SKETERS-ANDERSON, ) | |
| ) | |
| Defendants ) | |

## INDICTMENT

### COUNT 1
### Conspiracy
### 18 U.S.C. § 371

The Grand Jury for the District of Maryland charges that:

#### Background

At all times relevant to this Indictment:

1. **RICHARD LOUIS WRIGHT III ("WRIGHT")** was the United States Postal Service (USPS) Station Manager of Waverly Station located at 3000 Homewood Avenue, Baltimore, MD, 21218. He had been employed with the USPS since 1994 and had been the Station Manager at Waverly Station since January 2007.

2. **KIMBERLY ANETTE PARNELL ("PARNELL")** was the USPS Station Manager of the Pikesville Station located at 3603 Old Court Road, Pikesville, MD. She had been employed with the USPS since August 1995 and had been the Station Manager at Pikesville Station since July 3, 2010.

3. As USPS Station Managers, **WRIGHT** and **PARNELL** had, as part of their official duties, the authority to contract for goods and services to include landscaping and snow removal and certain cleaning services at the stations (commonly referred to as Post Offices) they managed and to submit invoices for payment by USPS.

4. **WRIGHT** and **PARNELL** knew one another professionally and personally and consulted with one another on the operations of their respective stations, including referring contractors to one another.

5. G.M. was a sworn police officer with Howard County (Maryland) Police Department. G.M. was also the owner of M. Landscaping in Baltimore, Maryland. **WRIGHT** and G.M. knew one another socially and, starting in 2007 when he became the Waverly Station Manager, **WRIGHT** began contracting with G.M.'s landscaping company, M. Landscaping, at the Waverly Station.

6. In 2010, **PARNELL** contacted **WRIGHT** to ask for recommendations for a company to perform landscaping services at the Pikesville Station she managed. **WRIGHT** recommended G.M. to **PARNELL**. Thereafter, **PARNELL** began contracting with G.M.'s landscaping company, M. Landscaping, at the Pikesville Station she managed. After G.M. began contracting with **WRIGHT** and **PARNELL**, **WRIGHT** and **PARNELL** discussed his performance and other issues they were having with him, described in more detail below, with one another.

7. **SHANE ANDERSON** operated a landscaping company called Youthful Minds Lawn Care, located in Baltimore, Maryland. **ANDERSON** was an acquaintance of **PARNELL**.

8. In and around Spring 2013, **WRIGHT** and **PARNELL** became dissatisfied with G.M.

Thereafter, **PARNELL** approached **ANDERSON** about performing landscaping services at the Pikesville Station. **PARNELL** also recommended **ANDERSON** to **WRIGHT** and introduced **ANDERSON** to **WRIGHT**.

9. **LADENA DELORE SKETERS-ANDERSON** (aka Ladena **SKETERS**) ("**SKETERS**") operated a cleaning company called Keep U Clean Janitorial Services, LLC in Randallstown, MD. **WRIGHT** and **ANDERSON** had been business partners in a janitorial services company before **SKETERS** went into business as Keep U Clean. **WRIGHT** used Keep U Clean for cleaning services at the Waverly Station and recommended Keep U Clean to **PARNELL** at the Pikesville Station.

## THE CONSPIRACY AND ITS OBJECTS

10. Beginning in or about October 2007 and continuing until approximately October 2013, in Baltimore, Maryland and elsewhere, Defendants **WRIGHT** and **PARNELL**, public officials, did knowingly and willfully combine, conspire, confederate, and agree with **SKETERS, ANDERSON**, G.M. and others known and unknown to the United States:

    a. to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept something of value, that is money from G.M., **ANDERSON** and **SKETERS**, in return for being influenced in the performance of an official act and being influenced to commit and aid in committing and to collude in, and allow and to make opportunity for the commission of a fraud on the United States; that is Defendant **WRIGHT** agreed to use his official position as Station Manager of the Waverly Post Office and Defendant **PARNELL** agreed to use her position

as Station Manager of the Pikesville Post Office to award USPS contracts to companies owned or controlled by **SKETERS**, **ANDERSON** and G.M., in violation of 18 U.S.C. § 201;

b. to defraud the United States of money and property; and

c. to defraud the United States of the honest, loyal, and faithful services of Defendants **WRIGHT** and **PARNELL**, and of its right to have USPS contracts administered honestly, fairly, and free from corruption, self-dealing, and deceit, in violation of 18 U.S.C. § 1343.

## MANNER AND MEANS OF THE CONSPIRACY

11. It was a part of the conspiracy that Defendants **WRIGHT**, **PARNELL**, **SKETERS**, **ANDERSON**, and G.M. would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of USPS, in that Defendants **WRIGHT**, **PARNELL**, **SKETERS**, **ANDERSON**, and G.M., among other things, would do the following:

    a. **WRIGHT** and G.M. agreed that **WRIGHT** would use his official position at the Waverly Post Office to submit false and inflated invoices from M. Landscaping for landscaping and snow removal to the USPS in exchange for a percentage of the proceeds paid to M. Landscaping by the USPS.

    b. When **PARNELL** approached **WRIGHT** for recommendations on landscaping contractors, **WRIGHT** recommended G.M. to **PARNELL**. Thereafter, **PARNELL** and G.M. agreed that **PARNELL** would use her official position at the Pikesville Post Office to submit false and inflated invoices from M. Landscaping,

4

   for landscaping services and snow removal to the USPS in exchange for a percentage of the proceeds paid to M. Landscaping by the USPS.

c. When G.M. failed to make timely bribe payments to **WRIGHT** and **PARNELL**, **WRIGHT** and **PARNELL** discussed with one another ways in which to obtain the payments from G.M.

d. When **WRIGHT** and **PARNELL** became dissatisfied with G.M. because he was not making timely bribe payments, **PARNELL** proposed that they replace G.M. with **ANDERSON** whom, they believed, would make bribe payments to them in exchange for USPS contracts.

e. Thereafter, **PARNELL** and **ANDERSON** agreed that **PARNELL** would use her official position at the Waverly Post Office to submit false and inflated invoices from Youthful Minds Lawncare for landscaping services to the USPS in exchange for a percentage of the proceeds paid to Youthful Minds by the USPS.

f. Similarly, **WRIGHT** and **ANDERSON** agreed that **WRIGHT** would use his official position at the Waverly Post Office to submit false and inflated invoices from Youthful Minds Lawncare for landscaping services to the USPS in exchange for a percentage of the proceeds paid to Youthful Minds by the USPS.

g. In an arrangement similar to the one he had with G.M., **WRIGHT** and **SKETERS** agreed that **WRIGHT** would use his official position at the Waverly Post Office to submit false and inflated invoices from Keep U Clean for cleaning services to the USPS in exchange for a percentage of the funds paid to Keep U Clean by the USPS. Later, **WRIGHT** began submitting Keep U Clean invoices to the USPS for cleaning work done by employees at his direction at the Waverly Station. **WRIGHT** did this in order to avoid conflict-of-interest rules and in direct

contravention of instructions he had been given not to perform contract work at the station he managed.

h. **WRIGHT** also proposed to **PARNELL** that Keep U Clean employees under his direction perform cleaning services at the Pikesville Station in exchange for a bribe payment to **PARNELL** and **PARNELL** agreed to that arrangement.

## OVERT ACTS

12. In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by one or more of the conspirators in Maryland and elsewhere:

   a. On January 7, 2013, **SKETERS** deposited a check made out to Keep U Clean from the USPS in the amount of $3,250.

   b. On January 8, 2013, **SKETERS** issued a check made out to Wright Way Cleaning in the amount of $3,000.

   c. On January 8, 2013, **WRIGHT** endorsed the check.

   d. On February 13, 2013, the USPS issued a check in the amount of $3,750 to M. Landscaping.

   e. Thereafter, **WRIGHT** asked G.M. for $2,000 of that payment

   f. On February 22, 2013, G.M. paid **WRIGHT** $2,000.

   g. On February 25, 2013, G.M. received a text message from **WRIGHT**. The text message contained the following communication:

   > Yo looking at invoices now total this month 25,052.46. Left my way now is 5450. I will be doing another one today for 3750 so added into what is left makes it 7200. U have 2 coming now for 3750 plus the one today for 3750 totaling 11250.

contravention of instructions he had been given not to perform contract work at the station he managed.

h. **WRIGHT** also proposed to **PARNELL** that Keep U Clean employees under his direction perform cleaning services at the Pikesville Station in exchange for a bribe payment to **PARNELL** and **PARNELL** agreed to that arrangement.

## OVERT ACTS

12. In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by one or more of the conspirators in Maryland and elsewhere:

   a. On January 7, 2013, **SKETERS** deposited a check made out to Keep U Clean from the USPS in the amount of $3,250.

   b. On January 8, 2013, **SKETERS** issued a check made out to Wright Way Cleaning in the amount of $3,000.

   c. On January 8, 2013, **WRIGHT** endorsed the check.

   d. On February 13, 2013, the USPS issued a check in the amount of $3,750 to M. Landscaping.

   e. Thereafter, **WRIGHT** asked G.M. for $2,000 of that payment

   f. On February 22, 2013, G.M. paid **WRIGHT** $2,000.

   g. On February 25, 2013, G.M. received a text message from **WRIGHT**. The text message contained the following communication:

   > Yo looking at invoices now total this month 25,052.46. Left my way now is 5450. I will be doing another one today for 3750 so added into what is left makes it 7200. U have 2 coming now for 3750 plus the one today for 3750 totaling 11250.

    h.  On April 26, 2013, G.M. received a USPS check dated April 22, 2013. The check was generated by a false invoice that Kimberly **PARNELL** submitted on behalf of M. Landscaping. The check was in the amount of $4,000 and mailed to G.M.'s Post Office box via the USPS.

    i.  Thereafter, **PARNELL** asked G.M. for $2,000 of that payment.

    j.  On April 29, 2013, G.M. paid **PARNELL** $2,000.

    k.  On June 10, 2013, **PARNELL** and G.M. had the following text message exchange:

| | |
|---|---|
| G.M.: | Hey I deposit the check... The fund will be available on thurs...How much do I owe you... |
| **PARNELL**: | 25, Ill have to meet u early thurs cuz I have some place I habe to be by 11 and I to take that to them bus that cool. Is that cool. |
| | Why they start holding |
| G.M.: | It won't be cleared until 5 pm u want to do Friday morning.. |
| **PARNELL**: | Why so long |
| G.M.: | I think because I put your and Richards in at the same time..." |
| **PARNELL**: | I know u got 25 laying around.Lol" |
| G.M.: | Lmao..Hands tied Down!!! |
| **PARNELL**: | Can u put it in my account Friday? |

    l.  On June 13, 2013 **WRIGHT** sent G.M. a text message stating:

> First thing tomorrow. Why don't u just leave a check and I can cash tomorrow! Don't bs me man! Need my loot and Kim too! Call u and texted no answer! Ur business is bout to be cut off bra

    m.  On June 14, 2013, G.M. paid **WRIGHT** $3,750.

    n.  On June 13, 2013, at 9:36 am, **PARNELL** sent a text message to G.M.. The text message stated:

>   Hey there. Your check cleared on the 11th. I need that today.
>   I have something very very important I have to take care of.
>   Call me! You told me they were holding it til tonight. No
>   hate to think you Tryna Bs me. Call me back

o.  On June 14, 2013, **PARNELL** sent a text message to G.M.. The text message stated:

>   Gm Just put it in my Bank of America ac ct. ill give u my
>   info when u get there. Thanks. Kimberly **PARNELL** ch
>   acct#XXXXXXXX2722  Bank of America. Text me when
>   it's done. Thanks.

p.  On June 14, 2013, G.M. paid **PARNELL** $2,000.

q.  On August 9, 2013, at approximately 3:49 pm, **ANDERSON** telephoned **WRIGHT**. The following is a transcript of the telephone conversation:

**WRIGHT:**    Hello.

**ANDERSON:** Yea Rich.

**WRIGHT:**    Yea, yea whichacallem he, he gotta know ah, he gotta know what your operating cost is and what ya, what ya trying to make off the deal.

**ANDERSON:** [Unintelligible]

**WRIGHT:**    $6,000, is, is, is no room for me really maneuver into cost wise what I wanna get, and, and, and the thing is, I you know, I don't know what it's gonna cost you to get your guys to do whatever, but I don't . . .

**ANDERSON:** Yea, I mean [unintelligible].

**WRIGHT:**    Yea, my guys he ain't getting no $6000.

**ANDERSON:** I mean which would, yea, I feel you. What you unusually pay 'em?

**WRIGHT:**    Well depends on what's going on, I mean, you, you tell me a cost and then I'll manipulate stuff around the cost that you say that you trying to get out of work. See, you see, see what I'm saying?

**ANDERSON:** Ok, I see what ya saying.

**WRIGHT:** You gotta know what, what, what you saying. Aight, I got x amount of guys coming to do this, it might cost me a 1000 and I want to make a 1000 myself, so here's my cost of 2000, 2500, 3000 something like that and then I maneuver the shit around to make sure that you get what che,

**ANDERSON:** Shit yea.

**WRIGHT:** What ya asking for and imma get what imma get.

**ANDERSON:** Ok, I mean that's fair, cause I mean cause I, I, I got 3, let me see 3, 3 dudes, um.

**WRIGHT:** OK, I mean you need, nah, you need to think about it a little bit more just think about it, but I mean you gotta remember that you'll get your cost, imma get mine.

**ANDERSON:** Aight, got ya, got ya, got ya, ok.

**WRIGHT:** Ok, let me know.

**ANDERSON:** So I hit ya back [unintelligible] I'll let ya know.

**WRIGHT:** Ok.

**ANDERSON:** Aight.

r. On August 21, 2013 at approximately 12:21 pm, **WRIGHT** sent a text message to **SKETERS** saying, "Good am! Heard u yesterday got a ck in pipe now coming ur way! Pull 500 for urself off rest in cash my way! Mailed out yesterday should be here Friday or Saturday."

s. At approximately 12:57 pm, **SKETERS** sent a text message to **WRIGHT**. The text message stated, " Ok."

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-17
### (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. G.M. received approximately $473,940 from the USPS for work purportedly performed at the Waverly Post Office when **WRIGHT** was the Station Manager.

3. From June 17, 2011 to October 1, 2012, G.M. deposited 14 USPS checks totaling approximately $50,650 into his personal or business bank account. During the same time period, G.M. wrote 14 checks payable to **WRIGHT** personally, totaling approximately $22,750.

4. On or about the dates enumerated below, in the District of the Maryland, the defendant,

### RICHARD L. WRIGHT, III

a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value, that is money from G.M., in return for being influenced in the performance of an official act and being influenced to commit and aid in committing and to collude in, and allow and to make opportunity for the commission of a fraud on the United States; that is Defendant **WRIGHT** used his official position as Station Manager at the Waverly Post Office to submit false and fraudulent invoices for service purportedly performed by G.M.'s company, M. Landscaping, to the USPS, which the USPS subsequently paid.

| COUNT | DATE | BRIBE AMOUNT |
|---|---|---|
| 2 | 2/22/2013 | $2,400 |
| 3 | 3/7/2013 | $2,400 |
| 4 | 3/18/2013 | $2,400 |
| 5 | 3/26/2013 | $2,400 |
| 6 | 4/12/2013 | $1,000 |
| 7 | 4/29/2013 | $2,100 |

| 8  | 5/10/2013 | $3,000 |
|----|-----------|--------|
| 9  | 5/16/2013 | $1,250 |
| 10 | 6/4/2013  | $3,000 |
| 11 | 7/08/2013 | $5,400 |
| 12 | 7/25/2013 | $4,000 |
| 13 | 8/22/2013 | $2,000 |
| 17 | 8/28/2013 | $1,500 |

All in violation of Title 18, United States Code, Section 201.

## COUNTS 18-19
### (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. G.M. received approximately $37,940 from the USPS for work purportedly performed at the Pikesville Post Office when **PARNELL** was the Station Manager.

3. On or about the dates enumerated below, in the District of the Maryland, the defendant,

### KIMBERLY A. PARNELL

a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value, that is money from G.M., in return for being influenced in the performance of an official act and being influenced to commit and aid in committing and to collude in, and allow and to make opportunity for the commission of a fraud on the United States; that is Defendant **PARNELL** used her official position as Station Manager at the Pikesville Post Office to submit false and fraudulent invoices for service purportedly performed by G.M.'s company, M. Landscaping, to the USPS, which the USPS subsequently paid.

| COUNT | DATE | BRIBE AMOUNT |
|---|---|---|
| 18 | 4/29/2013 | $2,000 |
| 19 | 6/14/2013 | $2,000 |

All in violation of Title 18, United States Code, Section 201.

## COUNT 20
### (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. **ANDERSON** received approximately $17,925 from the USPS for work purportedly performed at the Waverly Post Office where **WRIGHT** was the Station Manager.

3. From on or about July 2013 to September 2013, in the District of the Maryland, the defendant,

**SHANE ANDERSON**

did, directly and indirectly, corruptly give, offer, and promise a thing of value to **RICHARD WRIGHT**, a public official, with intent to influence an official act and to influence a public official to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States and to induce a public official to do an act and omit to do an act in violation of his/her official duty, that is cash in exchange for **WRIGHT** submitting false and fraudulent invoices to the USPS on behalf of **ANDERSON**'s company, Youthful Minds Lawncare, which the USPS subsequently paid.

All in violation of Title 18, United States Code, Section 201.

## COUNT 21
## (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. **ANDERSON** received approximately $12,520 from the USPS for work purportedly performed at the Pikesville Post Office where **PARNELL** was the Station Manager.

3. From on or about July 2013 to September 2013, in the District of the Maryland, the defendant,

**SHANE ANDERSON**

did, directly and indirectly, corruptly give, offer, and promise a thing of value to **KIMBERLY PARNELL**, a public official, with intent to influence an official act and to influence a public official to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States and to induce a public official to do an act and omit to do an act in violation of his/her official duty, that is cash in exchange for **PARNELL** submitting false and fraudulent invoices to the USPS on behalf of **ANDERSON's** company, Youthful Minds Lawncare, which the USPS subsequently paid.

All in violation of Title 18, United States Code, Section 201.

## COUNTS 22-25
### (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. From August 2010 to August 2013, **SKETERS** received approximately $99,926 from the USPS for work purportedly performed at the Waverly Post Office where **WRIGHT** was the Station Manager.

3. From on or about the dates enumerated below, in the District of the Maryland, the defendant,

**LADENA SKETERS-ANDERSON**

did, directly and indirectly, corruptly give, offer, and promise a thing of value to **RICHARD WRIGHT**, a public official, with intent to influence an official act and to influence a public official to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States and to induce a public official to do an act and omit to do an act in violation of his/her official duty, that is, cash in exchange for **WRIGHT** submitting false and fraudulent invoices to the USPS on behalf of **SKETERS's** company, Keep U Clean, which the USPS subsequently paid.

| COUNT | DATE | BRIBE AMOUNT |
|---|---|---|
| 21 | 1/8/2013 | $3,000 |
| 22 | 2/5/2013 | $2,500 |
| 23 | 4/5/2013 | $1,500 |
| 24 | 4/8/2013 | $6,000 |

All in violation of Title 18, United States Code, Section 201.

## COUNTS 26-29
### (Bribery)

1. Paragraphs 1 through 9 and 11 and 12 of Count 1 are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. On or about the dates enumerated below, in the District of the Maryland, the defendant,

### RICHARD L. WRIGHT, III

a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value, that is money from **SKETERS**, in return for being influenced in the performance of an official act and being influenced to commit and aid in committing and to collude in, and allow and to make opportunity for the commission of a fraud on the United States; that is Defendant **WRIGHT** agreed to use his official position as Station Manager at the Waverly Post Office to submit false and fraudulent invoices for service purportedly performed by **SKETERS'** company, Keep U Clean, to the USPS, which the USPS subsequently paid.

| COUNT | DATE | BRIBE AMOUNT |
|---|---|---|
| 25 | 1/8/2013 | $3,000 |
| 26 | 2/5/2013 | $2,500 |
| 27 | 4/5/2013 | $1,500 |
| 28 | 4/8/2013 | $6,000 |

All in violation of Title 18, United States Code, Section 201.

## FORFEITURE ALLEGATIONS

1. The allegations contained in Counts 1-29 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C.§ 981(a)(1)(C) and 28 U.S.C. § 2461.

2. Upon conviction of the offenses set forth in Counts 1-29, the defendants,

   **RICHARD L. WRIGHT, III,**
   **KIMBERLY A. PARNELL,**
   **SHANE ANDERSON, and**
   **LADENA SKETERS-ANDERSON,**

   shall forfeit to the United States of America, pursuant to 18 U.S.C.§ 981(a)(1)(C) and 28 U.S.C. § 2461, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violations, including but not limited to:

   a. For defendant **WRIGHT**, a money judgment in the amount of **$591,791** in U.S. Currency;

   b. For defendant **PARNELL**, a money judgment in the amount of **$50,470** in U.S. Currency;

   c. For defendant **ANDERSON**, a money judgment in the amount of **$30,455** in U.S. Currency;

   d. For defendant **SKETERS-ANDERSON**, a money judgment in the amount of **$109,976** in U.S. Currency;

3. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C.§ 982(a)(2).

7 U.S.C. § 2024(e), (f)
18 U.S.C. §1343
18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
Rule 32.2(a), F.R.Crim.P.

*Rod J. Rosenstein* /TJW/
ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

A TRUE BILL:

4/30/14
Date

**SIGNATURE REDACTED**

Foreperson